May it please the court, my name is Kimberly Brunson and I represent the appellant David Cunningham. With the court's permission, I would like to reserve three minutes for rebuttal. Your honors, the district court in this case failed to act as a gatekeeper under the federal rules of evidence and also failed to conduct an adequate voir dire in order to ensure the impaneling of a fair and impartial jury. While steadfastly refusing... I've got to ask a question about that right out of the gate. You said that, if I understand it correctly, that you thought that the videos, the child porn videos, should have been shown to the jury. That was one option. Right. And at the same time you're taking the position that they're so horrific that they shouldn't even have been shown to the selected jury, right? That is correct. That is correct. But the position... Can you help me understand how it advances the cause of justice to say we're going to show something that's so bad we can't show it to the selected jury, for you to veneer? Well I think there are two different issues, your honor. First of all, my position, our position is that the district court, had it conducted a proper Rule 403 balancing, would have ruled against admitting the videos into evidence. However, having made that decision and now being faced with a jury panel, potential jurors, who are your average people whom the government admits, would have no concept of what the child pornography videos would actually contain. They gave them some concept, right? Very little. You said you're going to see very graphic images that will be very disturbing to you of child pornography. Well the actual language used was, during this trial you will be shown child pornography, including graphic images, and here are descriptions of computer files, including graphic and offensive file names, which certainly will be disturbing to most, if not all of you. That was the information given to the potential jurors. As well as there was another question which mentioned child pornography as images of children engaged in sexual conduct. There was nothing more than that. And the government, in arguing before the district court that it had to show the child pornography videos to the jury, part of the support for that argument was, your average juror has no idea what child pornography actually is. Was that your fallback position, or is it that you wanted the judge to view the videos first? There are several. And then on that basis, he would determine whether to show it to the jury panel? Absolutely. I mean, the judge had a duty in this case, given the facts and circumstances of this case, given the government's representations that your average juror isn't going to expect this sort of stuff, that they wanted to introduce child pornography videos, which were clips from all of the files that were taken from the computer in question, or downloaded on an earlier date from the computer in question. Would you have been satisfied if the judge looked at the videos and said they were horrific? I can't show it to the panel at this time. It may be introduced in evidence, but I cannot show it to the veneer at this time. But I'll explain what they're in for. Would you have been satisfied with that? I would have been satisfied had he given the jurors some sort of information so that they would be in a position to be able to reveal to the judge and counsel whether or not they would be able to remain fair and impartial, having knowledge that they were going to see something that would be a fair representation of what they see. But he did. As Judge Jordan just mentioned, he explained to them what they were in for. I don't think that telling a jury, and I think the record also demonstrates that telling a jury they are going to see graphic images, which will be disturbing to most, if not all, prepares the jurors, your average person, to see videos of sadomasochistic bondage, rape, of young children being bound and held upside down. It's just not something that is contemplated by that language. So your complaint is that the admonition to the jury wasn't specific enough? That's correct. That's correct. That's one of, yes. So telling them these are graphic, this is going to be disturbing. And in context, also making it clear to them that it's going to involve not just a pose, but it's going to involve action. There's going to be, I mean, I don't know how you read what he said and not understand that there's going to be molestation. You're going to see kids being molested is what he's saying to them practically when he says you're going to see graphic, disturbing images of sexual acts involving children. Doesn't that communicate to the veneer? You're going to see some molestation there. Well, Your Honor, I don't think that's accurate. I do not believe the judge told the jury that they would see acts of molestation. There were some jurors from the panel that learned that information. But those were persons that were individually, it was during individual voir dire, and it was questions of defense counsel. Defense counsel in response to different reasons for the veneer persons to be brought. And I unfortunately can't remember them all, so I took notes. But there were a total of six jurors from the potential, from the jury panel, who learned more information than just that the child pornography would be graphic images. And those jurors, three of them, three out of six, after learning that it would include videos or sex acts or molestation or prepubescent children, there was different information that went to different jurors, three of them said I could not remain fair and impartial. Three could. Three determined after learning more than just that it would be graphic images said yes, I can watch that and I can still render a fair and impartial basis and I can deliberate fairly. Isn't this the area where it's the most, the discretion of district judges practically in an apex? I mean, the Supreme Court has said that the adequacy of voir dire is not easily subject to appellate review. They've been almost as, you know, they've told us to butt out practically. Well, Your Honor, absolutely. They don't ask us to butt back in. District judges have a lot of discretion. They have very broad discretion in conducting voir dire, but it is subject to the essential demands of fairness. And the district court cases demonstrate that the district court has a serious duty to probe for hidden prejudice. And where the circumstances would indicate that there's a reasonable probability that prejudice arises from a failure to not necessarily ask a specific question, but to inquire into a certain area, that is cause for this court to become involved and find an abuse of discretion and reverse. It does seem like your weakest part of your argument, though. It seems like a much weaker argument than your 404, than your 403 argument. I'm sorry, Your Honor? It does, though, seem, at least to my mind, we haven't discussed this case, like a much weaker argument than your 403 argument. And you don't need to win, obviously, on the voir dire argument to get to the 403 issue. Well, I think they're both good, Your Honor. I'm sure you do. I'm sure you spend a lot of time convincing yourself of that. But the facts and circumstances, just for a moment, if I could indulge you with regards to the voir dire, there are lots of red flags that came up in this case, well before voir dire, where the government proposed to admit the actual videos or edits of those videos, actual compilations, to the jury because your average person wouldn't expect this sort of stuff. That was why they wanted to get it before the jury. I thought they wanted to get it before the jury. I thought the argument was, we have to show that this was knowing possession of child pornography. And in order for people, I mean, the stipulation that you entered into said, these are images of people under the age of 18, basically. And I thought the government's pitch was, you know, so you might see a picture of somebody who's 17 years, 353 days old. That may not shock and offend, and more to the point, it may not leave somebody thinking, oh, that's child pornography. We want somebody to see this so that they'll know when they see these children and what's happening to them, they'll realize that there's not a sentient human being anywhere who wouldn't recognize instantaneously that this is child pornography and know it. And that's why it needs to be shown to the jury. That's the pitch they make. That was part of the government's argument. Why isn't that a perfectly legitimate pitch and undermine your argument that they're really trying to slip it in there for some unworthy purpose? Well, I think the answer is twofold. One is, I'm not suggesting the defendant's stipulation was sufficient, but I think that talking about the substantive Rule 403 decision of the court, which, if you read the court's report, he had a hands-off attitude about this. The defense counsel was not going to make him look at it. He wasn't going to balance any probative value against the prejudice or any potential for the prejudice to be substantial. Did he ever look at it? Pardon me? Did he ever look at it? No, he did not, Your Honor. No, he refused to look at it, which perhaps is understandable given the nature. But as a part of his duty, it was required, particularly where defense counsel kept coming to the court and saying, this is just, it's beyond the pale. It's not just prepubescent. It's violent assault, and it's not just still images. You won a lot of those arguments, right? I mean, what ended up getting shown was a total of two minutes and one minute clips in total, twice, without sound, and with the most extreme images available not included, right? I mean, your advocacy succeeded in keeping out a whole lot of stuff that you thought shouldn't get in front of the jury, didn't it? I can't agree with the court's belief that the most extreme, there were several clips that the government agreed not to put in. And I don't know what contained in the record doesn't show what were in those clips they agreed not to. But if the court reads the summary put forth in the government's brief, I think it's fair to say that this is gut-wrenching. I'm not suggesting that this isn't horrific. What I am suggesting is evidently there were things that were more horrific because the government said, yeah, we agree. We're not subjecting the jury to that. Well, I'm not sure the record supports that completely. There are several things that there's two clips, from my understanding, that the government agreed not to put in. But I don't know if they were more horrific, less horrific. They did agree not to put in sound. But beyond that, there have been many cases in other circuits upholding the introduction of child pornography, but they've been subject to strict limits. The district courts have been, in most cases, looking at these saying, well, there were only thumbnail sketches initially. There were only stills. There were videos, but perhaps there were three seconds. In this case, the district court was simply not in a position to determine whether or not any juror would be so repulsed after seeing these videos that they would be unable to go on and fairly deliberate the case on the basis of the evidence. This is not a case in which the evidence... Didn't the judge do essentially the things that happened in the Ganell case? I mean, if you go through that Ganell case and you look at the limits that were put on the court, it was on the length of the clip, on the amount of times the clip was played, on the cautionary instructions, and the manner in which the voir dire was conducted. And in both cases, Ganell and here, you had short clips, one minute versus two. You had the amount of times the clips were played, once. You had cautionary instructions before and after in both cases. And you had voir dire. I recognize that you don't agree that it was adequate, but you had voir dire in which there was some effort to say, you're going to see some bad things here. Aren't those... Aren't these cases roughly on par with the district court here doing the same sorts of things that were done and upheld by the Ninth Circuit? I disagree, Your Honor. In this case, the judge put no limits whatsoever. The judge said, hopefully, I will allow the government to put this into evidence, although hopefully in a summarized and condensed format. Say that again? The judge ruled that the government could put the videos into evidence, although hopefully in a summary and condensed format. Can you show specific independence for hopefully? Absolutely, Your Honor. And while you're looking for that, then is your position that even though it ends up in roughly the same place as Ganoe, the fact that Judge Schwab used more lenient language in getting it there makes it infirm? That if he had said, you will do this instead of, in effect, I hope you'll do this, that that's what the legal distinction is? Your Honor, I don't believe the record could show that it was done. These clips were made specifically by, I don't even know who, the government or government agent. They were edited. They were put together. You know what they contain. There were hours and hours and hours of these things, and they get reduced to two one-minute videos. Well, there were hours and hours of tape, but I'm not sure they all showed the horrific actual acts that were depicted and shown to the jury. As a matter of fact, one clip that was shown twice is significantly different, the webcam video, than others where there are actual bondage and abuse, sexual abuse is really, I think, a fair description. And I apologize, Your Honor, I tabbed this. Maybe you can do a 28-G with that. On rebuttal? I absolutely will. But my point is, if I could just indulge the Court for 30 seconds, the District Court simply did not conduct any balance. It operated on an improper assumption that because these videos were intrinsic to the offense that the government had carte blanche authority to enter as much or as little evidence as the government wanted. The District Court put no limits whatsoever. The District Court is not the entity that said no audio. I find that to be over the top and might unduly prejudice the jury. The District Court didn't limit the government to any particular point of time or segment. In fact, the government initially represented that it was going to put in eight clips that were 10 seconds each. There was sort of a continuum of the discussion between the Court and the parties with regard to whether or not the evidence would be admitted at all. And in Appendix 188, the government said early on it proposed to admit eight to 10 clips of 10 to 15 seconds. As the litigation went on, the government showed Defense Council the clips on March 31st in a response. Approximately two weeks later, the government proposed admitting seven several-second clips. That is not what was shown. Right, that wasn't what was shown. So, I don't mean to be repetitive, but I guess I'm coming back to the same question. In the end, good advocacy resulted in some compromises on what the evidence would be. That is, how it would be shown and demonstrated. If those compromises got you to the same place that the judge's order, if he had just said, I'm ordering you to do it, would have gotten you, what is the infirmity in the judge allowing the compromises to work out instead of imposing them? I don't think there's any way for this Court to make that determination at this point, because there's no way of knowing, had the judge viewed these videos, would he have imposed the limits, as this Court sees it, on what was actually introduced and allowed that? Or would he have not allowed any of it? Or would he have allowed only a small portion of it? He could have... Rule 403 requires a balancing between the probative value and the danger of unfair prejudice, which must include the availability of other evidence. Let me ask you this. Do you want a rule that says a judge has to review evidence? That that's as... I can't remember which of the circuits... United States v. Curtin and Bonk Ninth Circuit, United States v. Lowry. Right, the Ninth Circuit said you have to view it. Now, the Seventh Circuit didn't take that position. In fact, they left the door open and said maybe there are cases where it's so obvious that evidence is lacking in probative value that you don't have to do that. So they seem to take a lighter line. Do you think we ought to be following the Seventh or the Ninth? Well, I think the Seventh Circuit said it may be so lacking in probative value that it's not admissible, in which case the court wouldn't have to look at it. Right, but it's not a... Precisely, it's a rule that would work in favor of a defendant, but it's not a hard and fast rule. So I'm asking you, do you think it ought to be a hard and fast rule the way the Ninth Circuit said it? Or should it be a more lenient standard the way the Seventh Circuit said it? I think in the context of child pornography, which, by its nature, would have a tendency to cause emotional reaction in a juror, when the government wishes to introduce that type of evidence, and the defendant makes a Rule 403 objection, it is incumbent upon the district court, in order to be able to make that 403 balancing, to view the evidence. Why would you limit it to child pornography? What about murder, rape, aggravated assault, assault with a deadly weapon? Why would you limit it to child pornography? Well, I think it might depend on the facts and circumstances of the case. One thing that distinguishes child pornography from these other sort of horrendous situations where a jury might be exposed to unpleasant evidence, is that at least there's a frame of reference when a juror is told you're going to see a terrible crime scene photograph of a dismembered body, because they may go to watch a movie, Saw III, or... Yeah, you see it on television, that's true. Right, or read a Stephen King novel or something like that. But when you say child pornography, as the government said way back when, thankfully, the average person has no idea what it would contain. And they would just... It's reasonable to give the juror some sort of indication. It's reasonable to require a judge to look at it when it's going to be shown to a jury. What would be the byproduct of having the judge view the videos, the child pornography videos? Is it that you wanted the judge to become an editor on behalf of the jury or counsel? What is the byproduct of this motion? Well, I don't want to use the term editor, but the judge has a duty to be the gatekeeper and determine whether or not the evidence the government wishes to introduce, whether or not the probative value is substantially outweighed by a danger of unfair prejudice. So you would have been satisfied if the judge had looked at the evidence and said, yes, there's an issue of intent here, and all the videos justify that, and so the jury has to look at it. Well, defense counsel would have been in a position at least then to argue why it is or is not probative of intent, and to argue why other evidence may be a better option than putting in the wholesale minute... So your objection is that the judge didn't bother to look at them in making the prejudice relevance analysis? I think this Court need go no further than that in order to reverse. How detailed were the descriptions? I mean, we've seen the descriptions of what these things were, and the district judge indicates that he'd seen the descriptions and the file names. If you've got in words what's going to be portrayed on the screen, is that enough for the judge to say, well, I know what's going to be shown, you've told me what's going to be shown, and without seeing it, I'm aware of what it is because you've said what it is, and I can weigh that against what the government's burden of proof is and its probative value, and I can render a reasoned judgment about it. Well, I can say that the descriptions given to the judge, the district court judge, when he made a determination that he would not look at the videos, but yet rule that they were admissible in the face of a 403 objection, was not the descriptions that are contained in the government's brief, which are much more detailed and much more graphic than the information given to the district court judge. The district court judge was told some detail, but it was in more general terms, such as I'm speaking to you. And I don't think it's the same. Let's generalize. Let's take it out of this case specifically. I guess I'm trying to put myself in the shoes of a district court judge. If you give the district court judge, say you gave them the level of detail that's in the brief here, say there's going to be two one-minute clips, and this is what each of those involves. There's going to be, you know, that the first one-minute clip consists of four separate videos of this length of time, this happens in the first one, this happens in the second one, this happens in the . . . And you agree that that's an accurate depiction in words of what happens on the video. Is that enough? Or does the judge have to view the thing? I believe when you're talking about photographs or videos, the judge has to review it. And the reason for that is, if you think about, for instance, we talked about Stephen King novels or a movie. I can stand here and read a passage from a very graphic Stephen King novel about someone's arm being sawed off slowly and describe in detail it to you. And I think that is very different, will cause a very different reaction to someone who would watch a video of that actually happening. And the only way to make a balanced decision as to whether or not that is going to, that should come into evidence, or part of it should come into evidence, is for the court to see it. Words simply do not equate with video. Thank you, Your Honor. Did you reserve time? Pardon me? I did, I reserved three minutes. Okay, once we're working down this reading, it's five, we're down to three. Yes, I'm sorry. Let's take a very brief break. It'll be shorter than the last break and we'll hear from the government. Anyhow, Ms. Haywood, you ready? Yes, may it please the court, Rebecca Haywood again on behalf of the government in the Cunningham case. I'd like to start with the issue of whether the district court erred in failing to view the child pornography videos before making a ruling under Rule 403. And it's our position there was no procedural error here because the district court understood the content and character of this evidence. How? How, because in a pleading filed April 5th, defense counsel summarized the evidence. Defense counsel was given the evidence from the government ahead of time and summarized it as a close-up of an adult woman licking a very young child's  hair, videos of penetration, several videos depicting children tied up and blindfolding, images where a young, prepossessive girl was penetrated by an adult while her ankles and wrists appeared to be bound to a table. Several of the videos showed the children's faces. How can the judge, the court, our review here is for abuse of discretion. I'm not even sure the judge exercised discretion. Let me give you a detailed description and see if I can portray to you what I'm describing. A middle-aged woman, kind of plain face, slight smile, peasant clothes, looking downward. Any idea what I just described to you? No, Your Honor. Mona Lisa. Now, I'm looking at the Mona Lisa as I described it. Would you have any concept of the quality or the texture of Mona Lisa from what I just said to you? I would not, but from what I just reviewed and recited, this court has an understanding and the district court did as well, and there was no real dispute below that the district court didn't understand the graphic nature of these videos. Was the court going to be too upset to look at the pictures? I can't imagine why the court wouldn't look at the pictures. I don't believe that's it, but there is an interest here that has not been talked about, and that's the interest of the child victims of these videos. And every time these images are viewed, there's a bar. Well, why don't you forget about Rule 403B? Because that's always going to be the interest. When evidence is excluded, we can forget about the Fourth Amendment because the public is always disadvantaged when evidence is tossed out. We can forget about Sixth Amendment because it really, you could argue, impacts negatively upon the public to have all these criminals represented by attorneys in trials and have to prove the... I don't understand your argument. You're saying that the interest of the child victim is to allow the government to unduly, if that's what happened, unduly bias the fact finder by showing pictures? Not at all, Your Honor. That have never been seen by the district judge? Not at all. The rule that they're asking for primarily appears to be a rule that in child pornography cases, before they're introduced, that a judge looks at them, and any time the images are viewed by anyone, there's a harm to the victim. And unnecessarily, when there's no dispute... You mean the jury would be harmed by looking at the... No, it's our position that was necessary for the jury to understand the full picture of this and to prove the element of knowledge. I misunderstood your argument. It's still a real stress, but I understand what you're arguing. Go back to the judicial function. I mean, isn't there a difference between a writing, which is what you say was okay, the description that he read, and the visual image in making a decision whether this is prejudicial or not? There can be a difference, but in this case, the descriptions were so telling, the court understood the graphic nature. On page 18... How can a writing be as telling as a picture? And going back to those cases in the Legion where an appellate court has said, well, these photographs are pretty brutal, but they're black and white photographs, they're not colored, and the court exercised its discretion by requiring the government to put in black and white photos, which are less gruesome and less likely to overwhelm the reason of the fact finder. There's such a difference between describing something in the fiber of what's described. I don't know how else to... And I know if you weren't a litigant, we could have this discussion and you would totally agree with me. But in the context of where you are, you can't agree with me because there's a 403B problem. But you can't seriously be saying that you can put, even if your Hemingway and Shakespeare rolled into one, you can put on a piece of paper a description, which will capture the essence of something like this, as well as a photograph, especially if it's a video. But maybe not as well as, but sufficient so that the court can exercise its discretion in this case. Well, help me with that. How did the court exercise its discretion? All the court did say is, let it in. I hope you'll be kind of judicious with what you show them. It's up to you. Go ahead and show it to them. What discretion is there? There were actually three separate motions under 403 filed in this case, three separate times. By the third time, the court said, look, I understand the graphic nature of these images. I do understand them. But these are actually the videos of the crime charged. And in light of the case law the government cited, I find that the evidence is so highly probative, this was evidence of the crime's charge, that it's not outweighed by the evidence. By that logic, you could have made them watch 36 hours, right? I mean, isn't the whole point of 403 to accept that there's probative value, but you have to engage in a way to see whether there's undue prejudice associated with it? And even though this was direct evidence of the crime charge, not 404B evidence as there was in Curtin or in the Seventh Circuit Laughley case or whatever the name of that is, this is the direct evidence. Still, if you'd come forward and said, we've got two hours we want to show, could the district court have said, well, it's direct evidence, knock yourself out? No, Your Honor, not at all. Because the court, at that time he was making the 403 ruling, he understood that the court was, the government was going to put in seven several-second clips. At that point in time, he understood what he needed to understand to make the determination. And I'll go forward here from here. Assuming that there was a procedural error in failing to view, the court did see this evidence at trial. The court watched the videos. You're talking about 403B, I thought we were talking about trial. Well, I'm sorry, what I was saying was whether he had a duty to view the evidence prior to its introduction at trial. But the court did view that, the jury and the court saw the evidence at trial. There was a renewed 403 objection, and the court did an analysis and found that the two minutes, the two separate clips, were not unduly prejudicial. And I'd also note that there's a substantive 403 challenge being raised here, and yet I have not, to this point, been asked to provide this court with the videos. So this court is going to make a determination on the substantive 403 issues. No, all this court has to do is decide, at least this judge, I don't know about this court, whether or not you can have a situation that requires the exercise of judicial discretion where the court doesn't put itself in a position to appropriately exercise its discretion. And I'm not sure I need to look at the... You may not want me to look at these photographs, given the 403B thing. You may not want me to look at the video. But it goes to the question of harmless error with regard to procedural default. They're asking, as a remedy for the district court's failure to view this before trial, for a new trial. And this court is sitting now to review the substantive issue. Assume we agreed with you that it was harmless error. That doesn't move us any further toward a rule to be applied in other cases. What would the government have us do? I ask your opposing counsel, is it the Ninth Circuit? Is it the Seventh Circuit rule? Is it some other rule? Is it your position that, you know, as long as the district judge is told by somebody what's in pictorial evidence, that that's good enough? That's always going to be good enough? Well, 403 is obviously... It's a fact-specific situation. But a rule to be proposed is when the parties are not disputing. The parties understand, and in fact, defense counsel is the party that provided the most explicit description here, that under the circumstance of this particular case, when there's not a lack of understanding about what these child pornography videos contained... They don't concede that. I think they'd be the first to say, well, we gave it a shot at describing it, but you have to see it. It's a qualitatively different experience. And you'll be able to make a judgment about whether this is so overwhelmingly nauseating and distressing to an ordinary person only by seeing it. And it's only by looking at it and making that judgment that you can fairly say, well, there's not some other way we can get this... get proof associated with the crime in front of a jury. And my response to that is the position they've taken on the substance of 403 undermines that argument, because they have not asked me to provide this information to this court, the videos to this court. I'm not sure how that answers my question. Why don't you try to answer the question I'm endeavoring to put to you, perhaps inartfully, and I apologize, which is, if they're... you seem to be relying on the idea that they made the description. I don't think they'd accept that that's enough, because three times they went to the judge and said, that's not enough. Merely telling you what's in there will not allow you to make a balance of prejudice and probative value. You have to have the impact of it in order to make that judgment. Now, if there's an error in that reasoning, what is it? The error in that reasoning is this evidence itself, which the court understood was going to be limited to seven particular excerpts, is so highly probative that you don't even get to the issue of unfair prejudice. I mean, this is the evidence of the crime charge. If it's really, really probative, it doesn't matter how prejudicial it is. It's highly probative, and the understanding that the court had... 403 requires a balancing. You can say it's highly probative, but you still have to balance it against unfair prejudice. And how can you balance it if you don't take a look at what it is that's going to be offered in evidence? Well, Your Honor, again, it's our position that the court understood enough to conduct this balancing. It's your position that it's so probative there is no balance. Well, perhaps I did say that, and I misspoke there. Well, I understand, old chief, but given the stipulation that they made, why not, in order to avoid this problem, why not simply stipulate to the jury that the defendant's not challenging the fact that this stuff is child pornography that he possessed. Well, not that he possessed. It is child pornography, and that whoever possessed it had to have known it was child pornography. Old chief answers that question itself. Old chief noted that regardless of whether there's a stipulation, the government has the right to prove its case. Was that the only reason you used these photos to prove your case? Absolutely. The only reason we introduced this is to prove a narrative. Well, you said to prove a narrative. The only reason is to prove the elements of the offense? Well, there's a second component of that which old chief expressly recognizes, which is that a juror who has to sit in judgment has a right to understand the moral underpinnings of the case. Whoa, whoa, whoa. That's where we're going to go with my question. Can you find an old chief who talks about the moral underpinnings? Absolutely. On page 188, the court specifically said that evidence is important not so much as to establish an element of an offense, but to establish the human significance and to implicate the law's moral underpinnings. The law's moral underpinnings. In order to avoid problems of jury nullification or to avoid problems where a jury just doesn't understand, we've said there's this terrible child pornography, there are graphic images introduced, but a jury has some expectation, that's on the next page, page 189. The court talks about a jury has an expectation to see certain evidence and that's why the court and old chief limited the rule on stipulations to the felon status. And that's part of this here too. That is why the government is entitled to prove its case as it sees fit. You said in your brief, maybe this is what you just answered, on page 36. The government was not required under old chief or any other precedent to remove the cohesiveness of the presentation of this evidence and the moral force of its case. That's what you meant by the moral force of your case? That's right. And also again, in terms of the expectations that are provided in a case that old chief also talks about, the expectations of what is going to be introduced in a child pornography case. Stepping back a moment, you would agree that visual images, even without sound, would be more prejudicial or tend to be more highly prejudicial than the written word? Yes, your honor. Doesn't that make it more compelling for Judge Schwab to look at these images before introducing them in evidence? Your honor, he did not look at the images and again... But he read descriptions of what was going to be in the images. He read descriptions of what was going to be introduced. They were videos and that's actually what was on Mr. Cunningham's computer. This is the evidence. So I think their 403 argument appears to have two lines to it. First of all, we were required to stipulate and I think old chief itself answers that. We were not required to stipulate to engage in a stipulation. We're entitled to prove our case with our evidence and of course with a 403 analysis. And then the second point is well, were these too graphic? Were they too... Should we have just introduced deals? And when you go down that line, the evidence that we talked about, the evidence that the agents talked about on the stand were evidence of videos. They were described and evidence that we introduced in terms of the videos were consistent with the testimony of the officers. Yeah, I think the problem is from your standpoint, introducing the videos and evidence, the problem is the initial determination by the judge as to whether prejudice outweighed probative value. But again, then I get to the question of what should be the remedy for that. If that in fact was an error, when this court is sitting and addressing whether it should have come in... Well, there is a remedy. Sure is. I mean, if the jury was prejudiced by looking at images that the trial judge might have excluded, then the remedy is a new trial. That's right, Your Honor, but in terms of the procedural error and just him simply failing to look at the images... Simply? How can you put that adverb in front of that phrase? Well, in terms of failing to look at it... Simply failing to look at it. The question... Simply failing to balance. Simply failing to follow the rules of federal evidence, perhaps. Perhaps, but we do not agree that that's what happened. And when you get to the question of the substantive 403 analysis, there was no harm. This was such... This was the elements of the crime. This was the evidence that we... This was the charged evidence. But again, you're saying that as long as the evidence that gets to the jury is probative and relevant, then there can't be any 403 problem. That's what you're arguing. No, that's not what I'm saying because then we talk about... Judge Jordan talked about the Gannot case. There were cautionary instructions given both before, after, and during the final instructions. There were hours of videos. The evidence was limited to two one-minute tapes. There... We removed the sound. There was a voir dire done. And it's an abuse of discretion on the voir dire. There were questions asked to probe any prejudices that the jurors may have had. So all of those factors come to the conclusion that there was no 403 problem. And even if it was, I could talk about harmless error with regard to that. Were there any strikes for cause at the voir dire level when the judge asked those questions? There were. There were actually... I think I said there were only two. But there were actually three jurors... In my brief I said two. I apologize. There were three jurors who were removed for cause based on their answers to the question of whether or not they could be fair having a case involving graphic images of child pornography. I apologize. My colleagues will indulge me. I want to turn to a different topic for just a moment. And that's the ban on the use of the computer in a sense. Would you agree that a 20 year ban is broader and longer than any we have ever upheld for an individual who did not use the internet to solicit children for sexual conduct? Yes, Your Honor. And in light of what we've said in Albertson is there is it fair to say that there would be a narrower limitation that would still meet the needs that the district court judge was trying to reach in imposing that condition of supervised release? There could be a narrower way to have achieved some goals. But I would also note that first of all this issue is here on plain air review. The term of supervision will not take place for the length of the sentence, which was 210 months. So I understand this court's decision in Albertson as well as Volcker and Miller and the other decisions. But there is an exception in this in the condition that's different from those other cases that allows the use of the internet for purposes of work. So it is a less restrictive condition that exists. As long as it's been around, I understand in Albertson a judge may believe that he was blindsided by the opinion there, not so much in Volcker, because I think it's the same judges in Albertson. But now people ought to understand how much the internet is integrated into our life. And every time I see a case like this I wonder whether or not the court could prohibit someone from reading magazines because they were found with child pornography. To make sure they don't possess any pornographic child magazines if there are such things. So to make sure they don't possess any pornographic child magazines in the future, they can't produce, they can't have any magazines. To limit somebody from the internet, even though there is this wrinkle here about work, they can't use an ATM machine, they can't use a GPS, they can't use a cell phone, they can't watch television. It's that broad. And for judges to continually impose these restrictions, even though the court here apparently thought he was restricting it, without realizing that you can't put a defendant in a situation where he has to interpret the term internet when it's so easy just to put filtering software, not for 20 years but forever if you want to, put filtering software on the computer so if the person does go on the internet to places they have no business going, you can even have stuff that will immediately send an email message to the probation officer's mobile phone. So no matter where the probation officer is, he'll know ah, my guy is on the internet looking to get kiddie porn. I think I do understand this court's precedent, I do. I just note that the Fifth Circuit recently issued a case, and I will do a 28-J letter in Miller, in which it noted that people don't just access the internet at their own homes or even at work. In light of the ubiquitous nature of the internet and access to the internet, there are circumstances where putting a filter on a computer... So he can't go on the internet to look at kiddie porn then? Because that's as easy to enforce as saying he can't access the internet anywhere except work. Well, but that's not, that's not in terms of putting filtering software, in terms of the probation officer being able to check whether or not the condition is being complied with. How can the probation officer check whether or not he's accessing the internet? Period. I mean it's a condition, it may not be enforceable to a large extent outside of the home. And how can we possibly know what the state of communication arc is going to be 20 years from now? I mean it may be that it's literally impossible to do anything without somehow linking into a broader grid of information. And that's why, because we're here on Plain Air Review, one of the government's arguments was that this is not the appropriate time to address this condition. It would be better addressed after Mr. Cunningham is released from jail. And the condition takes effect because it is difficult to understand what type of, whether even the term internet is going to be used at that time. How can he challenge it at that time? How would you bring it up? He could move for a modification of the terms of his supervision. He could send an email to his lawyer. And thereby violate the terms of his supervisory release. I understand the problem. Thank you. Thank you. Thank you, Your Honors. I'll try to be very simple. The citation I spoke about is on appendix page 4 when the court was first considering whether or not to allow the government to introduce the child pornography evidence. The court said, the court will not reconsider, and I'm reading again from this first full paragraph on appendix page 4, the court will not reconsider its prior order permitting the introduction of the video images depicting child pornography regardless  at hand constitute child pornography because the government is entitled to present the evidence, although hopefully in a condensed format, which pertains to multiple elements of the offense. The court thereafter in a subsequent order stated That is the old chief's holding, isn't it? No, it is not, Your Honor. I mean, old chief's holding was limited. It was very limited. And the holding of the old chief was that a district court abuses its discretion when it spurns a defendant's offer to stipulate to the fact of a prior conviction and allows in evidence of that prior conviction. But our argument is not that the government was required to accept only the stipulation and not allowed to put anything else in. Our argument has been, and still is, that as part of the balancing, the probative balancing that must take place under Rule 403, the stipulation should be one factor which is considered because old chief makes a distinction between evidence that is relevant under Rule 401 which can be viewed sort of as an island. This evidence I can't argue against was highly relevant. Was it highly probative? I don't think so. The government needs to put forth under Rule 403 an argument of what is the probative value. I know what their argument is. It's not highly probative, it's the stuff. I mean, you can certainly make, and you have made a passionate argument that it's more prejudicial and unfairly prejudicial than probative, but what could be more highly probative than this? The presentation, it depends on what we're talking about. We're talking about the element of it being depictions of children engaged in sexually specific conduct. Of course. But also, I do take issue with two things. The government keeps talking about seven several second clips, which is not what was introduced. That's what they told the government they were going to introduce, but seven several second clips. Say that again? Seven. Seven different clips consisting of several seconds each. And I make that distinction because a prior case, and I believe it may have been Ganell, talked about a three second clip of a video gives an illusion of motion which is almost non-existent. And so any prejudice from actually watching the rape of a child versus a still video showing the rape of a child is not as significant when you're talking about three seconds versus watching 15 seconds is a very long time. I would ask this court to go back in chambers and sit there and look at 20 seconds on the clock and read what is in the government's description on page 17 of their brief. That's a very long time for a jury to look at this particular conduct. And also I can't say for certain, but if you read the government's description you can say there were 20 seconds shown of a total length of a file of 14 minutes. There's no indication that that was a 20 second clip taken from the middle of that 14 minutes, or was it different clips from the 14 minutes edited for impact. Let's talk about harmless air for a second. The government urges us to recognize that ultimately the court did see this and verified its holding so that it in the end ended up making a balancing and it would so that it would have come out had it done what you say it should have done at the motion and limine stage or at the latest before the jury was subjected to it. When it did view it, it affirmed that it viewed it as more probative than unfairly prejudicial and therefore there's not really an injury here. What's your response to that? First of all, the record does not reveal that the District Court judge ever watched the videos. The judge was in the courtroom, but I do not believe you can determine from the record that the judge actually ever put his eyes on the screen and watched those videos. Can we presume that the judge is doing his job? Are we allowed to do that? Are we allowed to assume that the District Court judge is actually paying attention to the evidence that's coming into the court? Well, even if that were the case, as you said, even if the judge watched at the same time the jury did, it's too late. What would be the realistic probability of a judge at that point saying, you were right, that was way too prejudicial, so I'm going to start all over again? Well, I hope the realistic probability would be if a judge recognizes that he or she is in error, they take steps to correct the error. I mean, what you're suggesting to us is that judges don't do their job. When they recognize there's a problem, they dummy up because they're embarrassed. But we try to give people more credit than that. And if we assume that the District Court judge is doing his job and he sees it, and he decides it's more probative than it is even though you've made a powerful point in the courtroom today that may benefit people later down the road if we agree with it, doesn't Mr. Cunningham stay right where Mr. Cunningham is on this issue? I just don't think the record supports that because the District Court had to view this evidence before being able to make a determination. It can't make a 403 determination after the fact, after it's seen a jury, after it's been testified to, after the jury has seen it, which is the only way it could have happened if the District Court watched at the same time the jury was presented with this evidence. Another thing that needs to be kept in mind is that the defense is important to the balancing under Rule 403. And many of the cases in which the viewing of actual child pornography has been upheld by courts of appeals have done so, among other reasons, because part of the defendant's defense may have suggested that the defendant unknowingly downloaded child pornography or didn't understand that it was wrongful because perhaps a psychiatric issue, something of that nature. In this case, the defense was purely, someone else in this house did it, it wasn't me. And the evidence is not overwhelming. There's evidence going both ways, there's credibility issues, and due to the nature of this evidence, it just may have been enough to put over the edge some of those jurors. We don't know. We'll never know. But I do believe that the voir dire shows that when you have 50% of the people who find out that the child pornography they're going to be forced to look at would be videos or pre-pubescent children or involve some sort of sexual abuse, 50% of those say, I can't stay on this jury and be fair and impartial. That at least shows a reasonable probability that there was a problem that should have been fleshed out further in the pre-trial proceedings. First of all, by the judge looking at the Rule 403 evidence to make the determination in the first place. And second, by letting the jury have some more information. They weren't told the jury panel was never told it was videos, they weren't told it was pre-pubescent. And we do know from the government's representations initially, that your average person would not expect, would not be expecting to see this stuff. So to tell them they will see child pornography, which contains graphic images, really tells them nothing at all. And what the government's asking for really, it seems, is a rule that where the evidence is intrinsic to the offense, Rule 403 doesn't apply because it's always going to be highly prohibitive because it's always part of the offense. We do understand that. That just simply cannot be. I believe the district court's failure to look at the evidence, the district court's failure to further inquire during blood year, was an abuse of discretion and warranting reversal in this case. Thank you. Are there any further questions? I see I've gone over again. Okay. Thank you, Ms. Van Dam. Any other advice?